We will hear argument this morning in Case 2018, Lange v. California. Mr. Fischer. Mr. Chief Justice, and may it please the Court, there is no basis in precedent or history for the categorical pursuit rule applied below. Police officers may not enter a person's home without the approval of a magistrate unless the emergency leaves no time to seek a warrant. So the key question here is whether probable cause to believe a person has committed a requiring immediate action. For two reasons, the answer is no. First, the governmental interest in investigating minor offenses is not always, or even usually, strong enough to support home entries unsanctioned by judicial officers. As Justice Jackson noted over a half-century ago, and Judge Sutton stressed more recently, such invasions can be wholly out of proportion with minor, non-violent offenses, not to mention mere infractions, which are also swept up in the Court-appointed amicus's rule. Second, as the numerous cases in the brief demonstrate, there are many non-threatening reasons why people sometimes step inside or continue into their garages when pursued by officers. Teenagers are sometimes frightened or confused and wish their parents to be present for any questioning. Women driving alone are sometimes afraid to stop on dark roads and occasionally are not even sure those following them are police officers. And residents of certain communities often wish to avoid having others see them interacting with the police, particularly when they're likely to be asked to identify perpetrators of other, more serious offenses. None of this is to say that a person who retreats into his or her dwelling is, as amicus puts it, home-free. A warrantless entry is still allowed when a concrete emergency exists, and even when there isn't any emergency, the police still have many options, including simply knocking on the door. But if a homeowner in this situation insists, it is not too much to ask for officers to procure a warrant before breaching the Fourth Amendment's most sacrosanct space. I'm happy to take questions. Mr. Fisher, you just said that the police could just go ahead and knock on the door. I would expect that would be a terribly dangerous situation. The one thing you know is that the person inside is trying to get away from you. And you know, if you go right up to the door and knock, there's no reason you shouldn't be concerned that he might swing the door open and have a gun. And the alternative you suggest about, well, you can go get a warrant, but it's easier to get a warrant now than it was maybe 20 years ago. But you still don't have any idea how long that's going to take. And during that time, the person in the house can also destroy evidence or, again, arm himself, call Confederates to come. I think your options really put the police in a dangerous situation. Mr. Chief Justice, let me first address knocking specifically and then the array of options. As to knocking specifically, I think it's important to bear in mind that the amicus here is asking for a categorical rule that sweeps up everything that is categorized as quote, hot pursuit. And so, yes, that's going to involve some dangerous situations like you're imagining. And there may well be edges and circumstances there that allow dispensing with knocking. But the definition of hot pursuit, the other side is propounding, includes somebody simply stepping in off their front porch or driving into their garage, as in this case. So, there are going to be many situations where somebody seems to be just simply seeking a moment of refuge or respite. And I think in those situations, knocking may work. But if knocking doesn't work all the time, as the courts noted more recently, warrants can be available within five or ten minutes sometimes. Well, sometimes. But, you know, even places that have a system set up like that, you know, your magistrates are on duty and you can call them. It's not always the case that you get through right away. And certainly, that's sufficient time, even if it's just two minutes, for somebody inside the house to get a weapon. So, we don't disagree, Mr. Chief Justice, that however long it might take to get a warrant, whether it's five minutes or five hours, if the officer thinks that, has reason to believe that the person will grab a gun, will summon confettis, anything like that, then there would be exigent circumstances. Well, isn't it kind of the flip side of what you've been arguing in your brief? Wouldn't the more trivial offense suggest a higher danger? I mean, if somebody, you know, takes off and runs away when you say you're going to, you know, arrest them for littering, it seems to me that that's the situation where you'd be most concerned. I mean, he's got something to hide. Well, Mr. Chief Justice, I think that when you give a hypothetical like that, you just have to bear in mind that this is a brutality of the circumstances inquiry. So, yes, I could imagine a reckless escape after a minor offense that might totally shift the balance in the way you're describing. But again, remember, we're also talking about somebody taking two steps off their front porch, somebody who's literally just walking into the house and saying, look, I want to go grab a Coke, it's cold outside, or who knows what else. Thank you, counsel. Justice Thomas. Thank you, Mr. Chief Justice. Mr. Fisher, I think in common law, the officer could pursue an escapee to their home and make a warrantless entry. Could we analogize someone who disobeys an officer's orders or resists arrest to an escapee under common law? I don't think so, Justice Thomas, and I'm not sure even the other side goes that far. And the reason why is because the escapee exception was reserved for people who had already been arrested. And remember, if they'd been arrested, that tells you two things. It tells you one thing, they probably committed a felony to begin with, because under common law, they usually didn't even bother arresting people who had committed mere misdemeanors unless it was an affray in progress. And secondly, it tells you that person does pose a very serious flight risk because they've already escaped once, and that totally shifts the balance in some of the ways I was describing with the Chief Justice. What do we do with the cases of common law that seem to allow the officer to enter without a warrant when he's pursuing a person who's engaged in a breach of the peace? I think the way to understand those cases, Justice Thomas, is that they presented exigent circumstances. Remember, Chitty said that if there was a need for an immediate arrest, that was good enough at common law, and the other commentators were in accord. And so if somebody was engaged in a breach of the peace, that meant that he was engaged in violent acts or on the brink of violent acts. And so that gave the officer the cause necessary to go inside without a warrant. One of the things, and this is just an aside, it just seems a little odd that we would look to common law to determine whether or not a warrantless entry is permitted, and yet the remedy is the exclusionary rule, which has no basis in common law. How do you reconcile those two? Well, I think, Justice Thomas, it's important to just answer the Fourth Amendment question before you. Obviously, the common law would have something very different to say about the exclusionary rule if that were before you or if you had a different case. But this could be a civil case, as most of the cases that are cited in the briefs are. Or you could have a police policy about breaking doors and going into homes for every single misdemeanor, no matter what the circumstances. So the question is before you under the Fourth Amendment needs to be answered. And I don't think anybody in this case would urge you, or at least I wouldn't urge you, to deviate from the Fourth Amendment question and stray into the exclusionary rule issue. Thank you. Justice Breyer. What should we do? I think your approach is always exigent circumstances. And you look and see if they're exigent circumstances. But our case, Santana, and certainly the lower courts, have said we need an absolute rule here. It's just not worth it. The person who's being chased can just stop. He's supposed to. And there are dangers all over the place. Sometimes not. Sometimes there's a good reason. But it's a bright-line rule that says hot pursuit is automatically exigent circumstances. And so what do we do about all those cases? And you can find some counterexamples, but not too many. Well, Justice Breyer, if you're asking me simply about the lower court cases, they're, of course, very much in conflict when it comes to misdemeanor pursuit, which is directly in front of you. No, misdemeanor. Let me cut you off there for a second. Because the problem with trying to separate misdemeanor and felony is that different states have different rules and different crimes that count as misdemeanors, and some are pretty serious. How do you draw a line if you're going to do a misdemeanor? Boy, Massachusetts is very different from California. So what do we do? We agree you shouldn't draw a line. And what you should do is do what the court has always done with exigent circumstances, particularly dealing with the home, which is do it on a case-by-case basis and leave the officers substantial discretion to analyze the situation, as the court has always said, but do require a showing of actual exigent circumstances. That's what the court said in Atwater, which is the case that declined to distinguish between misdemeanors and even less serious offenses. But what the court said is when you're dealing with the home, then that calculus shifts. And because the home is the Fourth Amendment's most protected place and an extraordinary privacy interest there, you need to have a case-by-case assessment. And the court said the same thing in McNeely. When you're dealing with a particularly important privacy interest, there's a body. You need case-by-case analysis. And, Justice Breyer, as a practical matter, I think it's important to understand that officers already do this. They already do it on a daily basis with the exigent circumstances doctrine in general. And even in many jurisdictions, including in California, as the L.A. County brief shows, officers do this every day while engaged in what we call hot pursuit or flight. So we're not asking the officers to do anything they aren't already being instructed by their own departments, and including the Department of Justice, to do when it comes to a situation involving flight. Thank you. Justice Alito? Mr. Fisher, let me try out this argument, which supports your position. The argument, very simply, is that hot pursuit has to be hot and it has to be a pursuit. It has to involve a chase. The person, the arrestee, must actually be trying to flee and avoid arrest. And there are justifications for such a doctrine because when an arrestee is chased and flees into his house, there are strong reasons across the board for not waiting for a warrant. In fact, there's a heightened risk that this person is going to sneak away before the house can be surrounded. One of the briefs says it takes six to eight officers to surround the house waiting for a warrant. There's a heightened risk that evidence is going to be destroyed, a heightened risk that the person is going to barricade himself in the house, get a gun, and resist the execution of a warrant. Here, the video shows there was no chase, and Mr. Lange really didn't flee. And all that the court below held was that a reasonable person in his position would have known that the officer was trying to stop him. After viewing the video, even that seems to me dubious. And if you take into account Mr. Lange's blood alcohol content, it's even more questionable. But if we hold that hot pursuit requires a hot pursuit, won't we go a long way toward preventing warrantless arrests for minor infractions, and therefore deal with the serious problems that you raise in your brief? I think you're right, Justice Alito. You would go a long way. And I think that's very much what Judge Sutton tried to do in the Stoneburner case, is particularly define the word hot as requiring some sort of reckless or extended chase. But I think there's two things I would point out there that you'd want to think about and pause over. The first is that even then, I'm not sure every single case is going to involve a true exigency in light of the totality of the circumstances. And so just to use your example about a house needing many officers to surround it, well, you could have a single-door apartment like in Minnesota v. Olson that wouldn't require more than one officer. So there's going to be many facts and circumstances. And as I said to Justice Breyer, the teaching of the court's case law involving the home is, when there's overbreath in terms of a proposed rule, you have to default back to it. It's not perfect, but the alternative is either to require impossible line drawing between minor offenses and major offenses or completely overhaul what has been understood as the hot pursuit doctrine. So there would have to be exigent circumstances, even where the offense is a felony and a very serious felony. Well, I think there, Justice Alito, if you had a reckless chase combined with a serious felony, I think it's hard to imagine situations where you wouldn't have exigent circumstances. But the teaching of Welsh in this court's case law is just that, that the severity of the offense does matter. And so you don't have to draw a bright line. As I said to Justice Breyer, we don't think you should. But the severity of the offense should be in the calculus. Yeah, Mr. Fisher, I'm out of time, but thank you. Thank you. Justice Sotomayor. Mr. Fisher, I'm trying to figure out, going back to what Justice Alito was saying, what circumstance where there is a genuine hot pursuit do you think would not justify a police officer, just on the basis of the pursuit, believing that the person was trying to hide something, trying to perhaps destroy evidence, whatever the cause, why wouldn't that justify entry? Wouldn't the nature of the pursuit itself create a sense of urgency? It would certainly lean that direction, but let me give you some examples from cases cited in the briefs where we don't think it would necessarily, in light of the totality, create that inference. So Gutierrez's case is a case where a woman was driving alone at night and hurried to her mother's house, and when the officer himself pulled up behind her and scared her, she tried to run inside the house. There are situations involving teenagers, as I said in my opening, who are simply scared and flustered, and so it's not laudable conduct for them to dart back to their parents' house, but it's, I think, understandable in an officer particularly who knows the teenager and knows more about the situation. You're giving me examples from the perspective of the flier. I'm talking about the perspective of the police officer, because isn't that what we have to look at? I think that's right, Justice Sotomayor. A police officer watching someone run away, why wouldn't, and do it in a genuinely hot pursuit manner, wouldn't that be enough to raise a reasonable suspicion? I think generally, yes, Justice Sotomayor. It's hard to answer the question entirely in the abstract, but remember, the officer may know the person, so he may know that the person doesn't want to interact with him in public and think that's what's going on. There could be other reasons why the officer thinks that the person simply wants to get away from wherever the officer is trying to arrest him. So I think, Justice Sotomayor, I'm not trying to push back very hard on this. I'm just trying to say that the teaching of McNeely and even of Wisconsin against Mitchell and in a highly stylized situation is that you do not adopt categorical rules even when the majority of situations or the vast majority of situations, also as in Richards, the knock-and-announce case involving drug crimes, even when the vast majority of situations are going to allow the warrantless conduct, you don't draw a categorical rule necessarily. But obviously, a rule like that would fall far beyond the facts of this case. Thank you, counsel. Justice Kagan? Mr. Fisher, unlike California, you take the position there's no categorical rule even as to fleeing felons. And I'm wondering if you would try to defend that for me because I look at our case law and see quite a number of cases which have, one after another after another, Justice said that there is such a rule as to fleeing felons. So how do you deal with quite a lot of, you know, some of it dicta, but really quite a lot of statements to that effect? I think there's two steps in analyzing the case law, Justice Kagan. First is to recognize that there's only one case the court has had that involves what the parties here would call hot pursuit, and that's Santana. So I don't think all the more recent references to hot pursuit or to Santana could create a rule that didn't otherwise exist. And so then the question is, what is the holding of Santana? And Santana itself says that it was, quote, clearly governed by Hayden. And Hayden, again, the parties all agree, was not even a hot pursuit case, and it involved exigent circumstances. And so Santana, we think, certainly has cross currents in the paragraph of analysis that the parties have debated, but just like in Scher, which the court dealt with more recently in Collins, we think in that situation it's best read as a fact-bound exigent circumstances opinion. Well, Mr. Kershaw, I agree with you about Santana, that you can legitimately read Santana either way, but the way the court has read it, and I'm thinking about Stiegel and I'm thinking about Stanton, there are statements to this effect in Walsh and McNeely, it seems that we've made a choice about which of two possible ways to read Santana that, you know, we have adopted one of them. And you're right, not in cases where that was the question at hand, but again, there seems to be such a number of these cases that, you know, eventually you got yourself a rule. I think there's two things about the references more recently to Santana. The references in general talk about hot pursuit, Justice Kagan. They don't talk about a felon or not. And I think the best way to read those hot pursuit references is probably along the lines of what Justice Alito was saying, is that if you read hot in that phrase as requiring a real emergency, giving rise to an exigent circumstance, then all those hot pursuit references make sense. And so then you're just left with the question of whether Santana would have adopted a felony rule versus a non-felony rule, and the court has very little to say about that specifically. And more generally in its case law, what the court says is you look at the totality of the circumstances. And what Welsh says is you look at the severity of the crime as part of the analysis, but you don't draw bright lines based on the severity of the crime. Thank you, Mr. Fisher. Justice Gorsuch. Good morning, Mr. Fisher. Just to pick up where Justice Kagan left off, suppose that the hot pursuit doctrine did have a categorical rule for felonies. Would ruling in your favor create kind of an absurd incentive for states to actually make failure to heed a police officer's lights rather than a misdemeanor turn into a felony? Do you worry about that? Well, Justice Gorsuch, I think that I can't address the empirical question whether I worry about it, but I do think it points out that you shouldn't be drawing a line, especially in this case, where you wouldn't have to do it one way or the other between misdemeanors and felonies. And I think that is, I think, a point in my column as to why it makes more sense to just simply look at the severity of the underlying conduct as part of the totality of the circumstance and not draw any bright lines on a classification basis. In terms of hot pursuit and the discussion we've had so far this morning, if we try to place limits on what makes a pursuit hot instead of limits on the seriousness of the suspected crime, which I understood to be the question presented, would those rules about hot pursuit be anything more than dicta in this case? Well, I think that you have a case before you where you could hold there was no hot pursuit. And then that reasoning and explaining why it was not hot pursuit would, I think, be obviously a holding of the court. It's difficult for me to answer too much beyond that as to how you might particularize any further rules and whether those would be dicta or not. It's not what we took in the question presented, though, right? I think all the parties agree that as the case came to the court, this is hot pursuit, as the court has used that phrase in its cases. And the difficulty, again, is in Santana, where the court said that hot pursuit was present when somebody took a couple steps backward on her front porch threshold if they're asked. So we don't have the benefit of a lower court decision. We don't have the benefit of parties joining issue on this, right? I think that's generally correct. I wouldn't resist too hard, though. I understand. I understand. With my little time left, I'm sorry, Mr. Fisher, for interrupting you, but I do have another question. That is, you ask us to take everything on a case-by-case approach. Your amicus, the Constitutional Accountability Center, offers more – seeks to offer more guidance through reference to the common law and identifying the rules that we can draw out of that. What's your response to that approach? I think we're in harmony with that brief, Justice Gorsuch, for two reasons. The common law had two basic rules. One is that a felony was good enough to continue hot pursuit inside of a house. And the reason why was because a felony would have been a capital offense, and we think the risk of escape to avoid the hangman would have been so strong there that that's why all of those cases would necessarily have qualified under a case-by-case basis. And then the only other category you really have in common law is breach of the peace or an affray, which shows that there's physical harm either occurring or at serious risk. And, again, every one of those cases would qualify on a case-by-case basis. So even though you had – you know, you could think of as broader rules at the common law, what they really are are rules that encaptured situations where it's necessarily exigent circumstances. Thank you. Justice Kavanaugh? Thank you, Chief Justice, and good morning, Mr. Fisher. I want to follow up on questions from the Chief Justice and Justice Breyer about how exigent circumstances would work in this situation, because it seems to me that there's a chance that exigent circumstances doctrine would essentially cover the waterfront of all the circumstances you would have when you have a hot pursuit to the house. So on page 14 of your brief, you refer – summarize existing doctrine with respect to destruction of evidence, the risk of persons who are threatened with serious injury, to protect the officers or the public. And then you also say – and this is the one I really want to explore – to prevent a suspect's escape. And when the exigent circumstances doctrine and all those things apply, almost inevitably in a hot pursuit case, particularly preventing a suspect's escape, because the suspect has already escaped, in essence, from – or fled from the officer. And so, to use your phrase, there is reason to believe – I think that was your phrase to the Chief Justice – there's reason to believe that the suspect will escape from the house because they've already fled. Well, Justice Kavanaugh, I think you're asking the right question, which is whether every scenario you can imagine under the label hot pursuit would constitute an exigent circumstance. But we just think empirically that's not the case. And we've cited – and part of it is because of this conversation we've been having this morning about how broadly hot pursuit is defined, not just in the lower courts, but also in this court, when you think about a case like Santana. So, remember, Justice Kavanaugh, I'm not going to disagree with you that somebody who engages in a reckless – Yeah, put aside whether it's really a hot pursuit. Assume a hot pursuit, a real hot pursuit. So I think a real hot – if what you mean by a real hot pursuit is a sort of reckless extended chase, then I think the odds are very high. But even then – Well, let me – okay, keep going. No, even then, I think you and I are both using words like usually the case, almost always the case. And under McNeely and Richards, that's just not good enough when it comes to the home. But the exigent circumstances doctrine, I guess – well, let me ask you this. Do you object to the Solicitor General's presumption? And if so, why? We do object to it. It's obviously better than the categorical rule that amicus propounds. But the reason – we think it just unnecessarily complicates the analysis. We think that – we don't precisely know what the presumption means, but I think it would mean one of two things. Either that that fact in isolation tilts in the favor of finding exigent circumstances, which we don't disagree with, but we just think that's an artificial legal rule that gets in the way of the ordinary totality of the circumstances approach. Or it would become a much more muscular presumption, something like a burden-shifting regime of McDonnell Douglas or Batson, and we just think that is unnecessarily difficult as well, and just inconsistent with the court's totality of the circumstances approach in the case law. Thank you, Mr. Fisher. Justice Barrett? Good morning, Mr. Fisher. I want to ask you about the analytical distinction between escaping arrest and evading arrest. So, do you concede that the exception would apply, and the policeman could break down the door, so to speak, enter the home without a warrant, if the defendant had escaped arrest? Certainly, at common law, the answer would be yes, Justice Barrett. And I think that in modern times, I think that that would almost always be the case as well. And I think the difference is because an escape is something where somebody has already been taken into custody and then has fled that custody. Whereas somebody who is evading, I think is the word you used, is somebody that has not yet been taken into custody. And so in this situation, duty and totality of the circumstances might just be frightened, confused. Well, I understand that, but, I mean, custody here, you know, let's imagine you have somebody who has committed something we would all agree would be a misdemeanor or something minor-like, but not in a car. Let's say it's on foot. Let's say it's a minor vandalism in a park. And the police approach, have the show of authority, and stop the person they've submitted to authority. You know, there you have an arrest. And then the person turns on his heels and runs. It's hard to see why there's a meaningful analytical distinction between someone who's been arrested who's been seized in that sense and then runs, and someone who just runs from the beginning after the police, you know, shows authority and says stop. What's the analytical distinction? I agree with you, Justice Barrett. Nine times out of ten or more, there won't be a meaningful distinction, so then the officer would have exigent circumstances. But, again, you have to look at this in the totality of the circumstances, and it might be a person has a mental disability. It might be a person just doesn't quite understand what's going on. It might be the officer knows the person, and he's saying, I just want to go home and see my parents, and is running off. There just could be more to know. And the teaching of the court's case law is that when it comes to the sanctity of the home, and remember that's what's really at issue in this case, that we don't draw over broad categorical rules, even if they're most always going to envelop situations where there are indeed exigent circumstances. I think the other way to think about it is if the concern is to have officers secure in their ability to carry out their jobs, you already have built into the exigent circumstances doctrine a less than certitude requirement, and so officers are going to be okay when they're in those situations. It's just for the outlier situations. If there's a less than certitude requirement, why wouldn't it apply? I mean, you said nine times out of ten that in my hypothetical where someone just refuses to submit, turns and runs, that there won't be really a distinction between that person and the person who initially stops and then runs. So why, you know, and the person may not, you used the example of someone who might be disabled or young or afraid, why doesn't the certitude, you know, the room for doubt, give the officer the ability there to say it's an exigent circumstance? I think because on the particular facts of that tenth case out of ten, the officer may not have any doubts at all and may fully realize that this is not an emergency situation. And I think that's the important thing to understand about amicus's rule is that the only cases the amicus's rule picks up are the ones where there is no exigent circumstance under traditional doctrine. We all agree that if there's a traditional exigent circumstance, the officer can conduct a warrantless entry. The only cases that a categorical rule sweeps in and makes any difference with respect to are ones where the officer knows that there is not a true emergency and there is time to seek a warrant. That's what we're here talking about. Thank you, Mr. Fisher. A minute to wrap up, Mr. Fisher. Sure. I think that there have been a couple of questions I've gotten about respect for police authority and the like. And I think the important thing to remember, and you've asked why people would escape or at least flee an attempt to pause them, and this is not a new problem that's had to deal with this. And I think that it's important to remember that all the way back to the framing in the common law before, there was the question of how to deal with people who might be frightened or confused or even distrustful of police officers or constables. And the solution has always been the warrant. That has been the solution that gives people security in their homes and understanding and calm that officers are proceeding according to law. And we think that that lesson from history is equally relevant today when you're dealing with minor offenses and officers who sometimes are overzealous in the competitive exercise of ferreting out crime. Thank you, Counsel. Mr. Harbert. Mr. Chief Justice, and may it please the Court, the exigent circumstances exception typically requires a case-specific showing that justifies an immediate warrantless entry into someone's home. The question here is whether to follow that case-specific approach when police pursue a misdemeanor suspect who retreats into a home or whether to extend to the misdemeanor context the categorical rule for hot pursuits of suspected felons. In our view, the categorical rule should not apply in the misdemeanor context. Felony and misdemeanor pursuits were treated differently at common law. The government has a weightier interest in immediately pursuing and apprehending felony suspects. And a case-specific approach for misdemeanors would be more consistent with precedent and with the privacy interests underlying the Fourth Amendment. I welcome the Court's questions. I guess I would pose the question that Justice Breyer was focusing on. The line between felonies and misdemeanors is very hard to draw. In many cases, it's counterintuitive, and it certainly varies from state to state. You know, if it's drunk driving, it can be a felony if it's your third offense. I mean, how does an officer know whether it's the first offense or the third? It can depend on the value of stolen goods. How does the officer know that? It seems to me, and it's a distinction that we've rejected in another context pertinent here, the Atwater case. What about all those uncertainties? Your Honor, we certainly acknowledge that officers will not always be in a position to know whether an offense is a felony or a misdemeanor. That's true, and we acknowledge that. But the reality is officers will often be in a position to know, and we don't believe that this will pose substantial practical problems for officers in the field. In a number of cases, an officer is going to have probable cause of an offense that he has no reasonable room for doubt is a felony. For example, What do you do with respect to curtilage? You know, a man's home is his castle, but we've also extended special protection to curtilage. Do your rules apply in that case? Why isn't the person home free when he's on the porch? He doesn't have to go through the door at all. Your Honor, I think the court has been pretty clear in recent cases like Collins and Florida v. Hardina that the curtilage does qualify as part of the special area entitled to the homeless protections under the Fourth Amendment. But I don't think that a suspect would be home free in the curtilage for the same reason that the suspect isn't home free inside the physical structure of the home either. Do you think the same protection applies to the curtilage as to the inside of the house? Your Honor, I believe that's the clear teaching of this court's recent precedents in Hardina and Collins. Thank you, Counsel. Justice Thomas? Thank you, Mr. Chief Justice. Counsel, following up on the Chief's question and Justice Breyer's questions, isn't the definition of felony today quite different and misdemeanor today quite different from what it was at common law? Certainly, Your Honor, there have been a number of changes to offense classification since the common law era. But in our view, the fundamental legal principle recognized at common law is just as vital and relevant today. And that fundamental principle was that officers could not pursue suspects into homes without warrants in cases involving minor misdemeanor offenses. And we still have a lot of misdemeanor offenses, minor offenses, on the books today. And so surely the best way to honor and vindicate that founding era commitment to the sanctity of the home is not to throw up our hands and discard those historic limits entirely by adopting the sweeping categorical rule proposed by amicus. We can do better than that. And the way to operationalize those historic limits on officer warrantless entries into homes is, in our view, to look to the felony misdemeanor line, which is the principle line drawn in American law today for distinguishing offenses based upon their level of severity. Well, as the Chief Justice mentioned and Justice Breyer, that's a line that we've had quite a bit of difficulty drawing. But beyond that, what prevents a state from simply enacting a law that says evading arrest or fleeing from a police officer is a felony? Your Honor, we think it's pretty speculative to assume that a state would enhance the penal consequences and all of the collateral consequences that come with a felony conviction for certain types of flight merely to circumvent a ruling of this court limiting the scope of the hot pursuit doctrine. Thank you. Justice Breyer. Thank you. Look, to be specific, as far as I know, a misdemeanor in Massachusetts is defined as a crime for which the sentence in jail is up to two and a half years, and the jail term must be served, however, not in the state prison, but in a local county jail. All right? So we include, as misdemeanors, assault and battery, carrying a loaded firearm under the influence of drugs, reckless driving where a death results. I mean, they're pretty serious. So under your rule, if you're after somebody who's just beaten up five people, assault and battery, or he's just really been driving recklessly and killed his wife, you're saying no hot pursuit, right? But in California, misdemeanor is very different, minor. What do we do? Your Honor, what I think you do is you recognize you limit the scope of the hot pursuit exception to felonies, and, of course, that doesn't mean that warrantless entries are not permitted in misdemeanor cases. It just means that the officer in those cases has to identify some case-specific basis to enter the home without first getting a warrant. So in Massachusetts, if, in fact, he's beaten up into a bloody pulp four people, you cannot just automatically hotly pursue him into the house. But in California, you can because it's a felony. Or what? I mean, they'll be all over the place. I mean, that's what I don't see how to draw this line, misdemeanor felony. And you don't in California. What you, in fact, have been saying is a misdemeanor, the hot pursuit rule, also allows pursuit into the home if it's jailable, which, by the way, picks up auctioning off a rabbit as a prize, which carries a jail term. Your Honor, I think the court could avoid those consequences by drawing a national uniform definition of misdemeanor. Oh, good. What is that? What is that? The standard traditional national consensus view, it's not the definition in every state, but in a sizable majority of states, the definition is an offense authorizing up to a year of incarceration. Justice Alito? What if a police officer has probable cause to believe that a fleeing person has committed two offenses, each of which is punishable by imprisonment for up to 11 months? Your Honor, in those cases, assuming the court defined misdemeanor along the lines that I was just discussing with Justice Breyer, I think that would be a misdemeanor offense. And so, in our view, the categorical hot pursuit rule would not apply. The officer would need to... Well, the person could get two consecutive 11-month sentences. If he could get one sentence of a year and a day, that would fall on one side of the line, but two consecutive 11-month sentences would not. Your Honor, I'm not sure the court would need to resolve all of the questions along those lines, administrative questions, in this case. But you think that's the typical way that probable cause is assessed in the field. You look at the individual crime and not to the possibility of staffed consecutive sentences for multiple crimes. Well, let me ask you this question. Under the California Constitution, does the Attorney General have the authority to tell the district attorneys of the state that they are not to defend any warrantless arrests of persons in the home where the offense is a minor offense, as defined by some definition provided by the Attorney General? Your Honor, the Attorney General of California is the chief law enforcement officer of the state. The exact kinds of state constitutional lines and responsibilities that Your Honor is asking about are fairly undeveloped as a matter of formal legal precedent. And typical practice is to defer to locally elected district attorneys and city attorneys who bring misdemeanor prosecutions in the trial court. Well, if the Attorney General could do that, I really don't understand why you are here. You are here on behalf of the state of California asking us to hold that a California rule is unconstitutional, even though the Attorney General, whom you represent, may well be able to effect that change as a matter of policy. Yes, Your Honor, and to be quite clear, we opposed cert in this case, and in our brief in opposition, informed the court that the California Department of Justice would cease relying on the categorical hot pursuit rule in misdemeanor cases handled by the department. But the court did grant cert, and so we're here providing the court with our analysis of what we think the best view of its Fourth Amendment precedent and doctrine is. Thank you. Justice Sotomayor? Counsel, I've been listening to the exchange with my colleagues involving the difficulty in deciding what's a felony and what's a misdemeanor. Part of the problem is that what are felonies are no longer absolutely necessarily, and in all situations, dangerous crimes. You can have white collar crimes where there is no danger. You can have all sorts of environmental crimes, other things that don't create exigency in the same sense that Santana was announcing the rule or that the common law came from. And so I don't know why anybody is arguing that there's a difference between felony and misdemeanors and why we're recognizing a categorical rule at all. Why isn't the better reading just that hot pursuit is the type of exigent circumstance that can but does not always justify warrantless entry, regardless of whether the underlying offense is a felony or misdemeanor? If you look at our holding in Santana, we talked about all of the circumstances that would make it likely that a drug dealer would destroy evidence once they saw the police officer on the scene. Our next case, Stanton, was not about whether or not the issue was a felony or not. It was the issue was, was the situation such as to justify reasonably entry? So I guess what I'm asking is, why don't we just announce the rule that I stated, that exigency can but doesn't always, whether it's a misdemeanor or a felony, justify a warrantless entry? Your Honor, in our view, that case-specific exigency standard is not consistent with the court's precedent in the felony pursuit context. So there's Santana, but it's not just Santana. It's all of the court's many statements over the years describing hot pursuit in categorical terms, including Stanton, which did address a limited issue as far as its holding, but the court, in describing the scope of the doctrine, described, quote, our precedent holding that hot pursuit of a fleeing felon justifies an officer's warrantless entry. Justice Kagan? Justice Kagan? Mr. Harbert, to continue with the difficulty of drawing lines between felonies and misdemeanors, Justice Sotomayor referred to this, but it's true that it's the basic line suggesting the severity of the offense, but it's really not the basic line as to whether an offense is violent or dangerous. I mean, sometimes it is, but a lot of times it's not. And the violence and dangerous aspect of the conduct seems the more relevant one for purposes of deciding when an intrusion into the home is proper. So just to give you an example, most domestic violence laws continue to be misdemeanors. And then, on the other hand, as Justice Sotomayor said, most white-collar fraud offenses are felonies. That doesn't seem to make a whole lot of sense with respect to when you would allow intrusions into the home and when not. Your Honor, it's not just the distinction between felonies as a class and misdemeanors as a class as to the likelihood that the offense will involve violence. Another key distinction is that the penalties in felonies, on the whole, are going to be quite a bit more severe than the penalties authorized for misdemeanors. And that's relevant here because the authorized penalties in a felony case, which can be decades or more in state or federal prison, is going to provide a quite powerful incentive to felony suspects to attempt to escape and permanently evade apprehension or perhaps destroy evidence. And those are exigent circumstances as well. We think in the felony pursuit context, considered as a class, one or more of those exigencies is pretty likely to arise in your average felony pursuit case. Thank you, Mr. Abbott. Justice Gorsuch? Good morning, counsel. I think my colleagues have kind of pointed on two difficulties with your argument. First, Justice Breyer points out that different states have different rules about what a felony is and what a misdemeanor is. And it would seem odd that the Constitution would, in its meaning, would depend upon the happenstance of positive state law. And second, we live in a world in which everything has been criminalized. And some professors have even opined that there's not an American alive who hasn't committed a felony under some state law. And in a world like that, why doesn't it make sense to retreat back to the original meaning of the Fourth Amendment, which I'm going to oversimplify, but generally says that you get to go into a home without a warrant if the officer sees a violent action or something that's likely to lead to imminent violence. And that's vastly oversimplifying, but why isn't that the right approach? Your Honor, we absolutely agree that the court should take the approach of looking to the original understanding of the Fourth Amendment, and in particular, to the common law history and tradition. I think we understand the common law history possibly, it sounds like, a little bit differently than you do. As we understand it, the leading common law commentators that our founders would have looked to all comprehensively addressed officer authority to enter homes without warrants in pursuit of suspects. And they allowed such entries in limited situations, A, in felony cases, and B, in a certain small subset of misdemeanor cases involving serious— And what unified that entire class of cases seems to be, again, some actual violence or its imminent threat. And what was qualified as a felony in common law were very few crimes, and they were all punished by the death penalty, usually. And today, pretty much again, anything or everything can be called a felony. Your Honor, felonies at common law are certainly a more limited subset than they are today. They weren't all violent, though. Larceny, for example, was treated as a felony. So we do think that the felony pursuit rule at common law is a pretty good analog for the categorical rule that we read this court's precedent as accepting in Santana and other cases. Thank you. Justice Kavanaugh? Thank you, and good morning, Mr. Harbert. Following up on Justice Gorsuch, I thought everyone here concedes that even if there's not a categorical rule, that exigent circumstances doctrine would apply. Is that correct? On the facts of this case? No, not on this case, just in general, that you could get into the house based on exigent circumstances without a warrant, correct? That's correct, Your Honor. Okay, and then one of the exigent circumstances that I mentioned to Mr. Fisher was prevent a suspect's escape from Minnesota v. Olson. You agree with that, too? We do, Your Honor, and the reason that... And that wouldn't necessarily always have what Justice Gorsuch was talking about with respect to violence. It could, it might not, but I think everyone's conceded in this case. You and Mr. Fisher are acknowledged. I don't want to put it pejoratively, but acknowledged what the law is, that preventing escape is an exigent circumstance that would justify warrantless entry into the house, correct? That's correct, Your Honor. Okay, and then on the common law, the amicus at page 23, and this is picking up on a question Justice Barrett asked and Justice Thomas asked to Mr. Fisher. Page 23 of the amicus brief says, a warrantless arrest at common law could always be made whenever a person was lawfully arrested for any cause and afterwards escaped and sheltered himself in a house. Now, of course, that's after an arrest, but I think Justice Barrett's questions pointed out this is an extremely close analog in many circumstances. What's your response to that aspect of the common law? Your Honor, my response is that it's not an extremely close analog. There is a critical difference between an escape from a full-blown custodial arrest, which is inherently risky and often going to involve violence, and hot pursuit as broadly defined by the court in Santana, which can extend to as little as one or two steps from the front porch, the front yard, or even, as in Santana itself, the immediate doorway area into the home. And that is just not inherently risky or dangerous conduct or conduct that suggests we're dealing with a suspect who poses an ongoing danger to himself or others or to society or who poses a risk of, you know, bolting out of the back door and making a run for it while the police standing outside pursue by foot or by car. Justice Barrett? Good morning, Mr. Harbert. So you just told Justice Kavanaugh that even if we say that the common law had a rule that was limited to felonies, that you agree that exigent circumstances would justify a warrantless entry into the home. If, in fact, the common law rule was quite narrow and said warrantless entries into the home only when there are felonies, breaches of the peace, and a phrase, and escapes from arrest, why wouldn't that end the matter? Tell me, explain to me what your rationale is for saying that you would then go on to exigent circumstances. Your Honor, two responses. One is just equivalent with the understanding of the common law rule. We disagree with the court-appointed amicus that a breach of the peace could be a sufficient basis to justify a warrantless home entry in pursuit of the suspected common law. Okay, that's fine. Put that aside. To answer the main question. Beyond that, Your Honor, as we understand, we agree with Petitioner that there were common law analogs to the case-specific exigent circumstances doctrine. For example, if an officer was aware of an affray or an ongoing fight in someone's home, or witnessed an affray outside, that could involve violence and ongoing risk of violence that could justify pursuing the suspect into the home. So there were analogs at common law to the case-by-case exigency standard. But why then wouldn't you just be in alignment with Mr. Fisher and say it's exigent circumstances all the way down? I guess I don't really understand, because in the misdemeanor cases that you're positing, they just kind of fall in a different category. You're saying those just fall into the same kind of like break in the door because there's a dispute going on inside or there's a fire or there's some danger. Why isn't it all then just exigent circumstances as Mr. Fisher proposes? For a few reasons, your Honor. I think principally because we read this court's precedent as already recognizing a categorical hot pursuit exception in the felony context, but setting that aside and focusing on the common law. We do read the leading common law commentators that our founders would have looked to as endorsing a categorical pursuit rule in the felony context. A minute to wrap up, Mr. Harbert. Thank you. It's settled that officers may immediately pursue suspects into homes when case-specific exigencies exist. And we think it's also settled that officers may enter a home without a warrant if they have probable cause to believe a fleeing suspect has committed a felony. But in our view, when an officer cannot make out probable cause of a felony or point to any specific harm that would result from waiting to get a warrant, the Constitution should require that officer to get the warrant. That approach is the one most consistent with history and precedent, as well as respect for privacy in the home. Under a categorical rule, by contrast, police could make warrantless entries based on probable cause of any misdemeanor, even for minor offenses like littering or loitering whenever a suspect disobeys police and takes a few steps into his home. Thank you. Thank you, counsel. Ms. Rice? Thank you, Mr. Chief Justice, and thank you for your questions. The Fourth Amendment generally requires officers to get warrants before entering homes, but the warrant requirement is subject to exceptions, and hot pursuit is one of them. The hot pursuit exception justifies warrantless home entry in a narrow class of cases where a suspect tries to thwart a lawful public arrest by outracing an officer to a dwelling. This Court has never suggested that the hot pursuit exception turns on the classification of the underlying offense. It should now expressly hold that it does not. The justifications for the exception relate to the suspect's flight, not the nature of his initial crime. Officers cannot be expected to accurately classify offenses in the midst of a chase, and this Court's reasoning in Atwater, which rejected a felony misdemeanor distinction for public arrest, applies as equal force here. Unable to defend a felony-only hot pursuit rule, Petitioner now suggests that hot pursuit isn't actually a distinct exception to the warrant requirement at all. Instead, he claims that officers must point to exigencies other than a hot pursuit, even in felony cases. No Court appears to have taken that view, nor do any of the states on either side of this case support it. For good reason. The hot pursuit exception is settled by law, and it protects important law enforcement interests that categorically outweigh privacy interests when a suspect decides to flee. To be clear, the fact that the Constitution permits officers to enter homes in hot pursuit cases does not mean that they must always do so. State law and department policies can and do limit the circumstances in which officers pursue fleeing suspects. But this Court should not constitutionalize those nuanced local policy judgments, particularly not along the line as wobbly as the one between felonies and misdemeanors. I look forward to the Court's questions. Counsel, a lot of your argument is focused on uncertainties. You know, the officers don't know why the person is fleeing. They don't know what he might do inside the house, that sort of thing. And I understand that to be the basis for support of a categorical rule. But there may be some cases where there isn't really any uncertainty. You know, some that have been suggested. You know, the group of teenagers in the empty lot drinking beer and the officer comes up and they all take off. Why isn't it? It may not be a case-by-case approach, but I guess it's close to what the Solicitor General is suggesting, a presumption. I mean, do you really need to have the right of hot pursuit in the case that I've hypothesized? You know, no real basis for chasing the 18-year-old drinking beer with his friends into his parents' house? Chief Justice Roberts, the hot pursuit rule serves a crucial law enforcement interest in every case by eliminating perverse incentives to flee. Flight itself can be dangerous and it always undermines the rule of law. And as you suggest, it can be impossible to know in the heat of the moment which cases present risks to greater or lesser degrees. But one thing we know for certain, as Justice Kavanaugh points out,  implicated in hot pursuit cases have already shown themselves to be interested in escape. Yeah, but the reason a teenager drinking beer is interested in escape, it's hardly, it doesn't seem to be something that would warrant the officer breaking into the house. An officer could certainly decide not to pursue under those circumstances, Chief Justice Roberts, but the Constitution doesn't require that they do so. To your question about the presumption the Solicitor General's brief suggests, the presumption is better than a pure case-by-case rule because it better reflects the categorical balance of the interests and it provides more guidance on the margins. But it also suffers from nearly all of the same flaws. There's not a doctrinal basis for it. Santana and subsequent cases articulate a rule and not a presumption. It still relies on the line between felonies and misdemeanors. I'm not sure which cases would be covered by it, and like a case-by-case rule, it invites constitutional litigation over these difficult, heat-of-the-moment judgments. Justice Thomas? Thank you, Mr. Chief Justice. Counsel, I'd like to refer back to Justice Alito's first question about looking at hot pursuit in a more rigorous way. Wouldn't your argument be a bit easier if, for example, in this case, there was actually a hot pursuit rather than this kind of confusing pursuit that we have here? Justice Thomas, there's no dispute in this case that there is a hot pursuit. That's the premise of the petition for certiorari. And Santana made clear that while some sort of chase is required, there need not be an extended hue and cry in the streets. So I agree that there are limits on what a hot pursuit is, but I would resist your suggestion that this case didn't implicate one. Well, you do cite Santana, and I think we've read it that way. But do you have any cases that say expressly that a warrantless entry is available, even in cases of all misdemeanors, as opposed to some misdemeanors? Justice Thomas, I'm not sure that this court has ever addressed that question directly, but Santana's holding was framed categorically, and in each of the times where this court has subsequently referred to hot pursuit, and there's a fair number of them, as Justice Kagan suggested, it is referred to hot pursuit as a categorical justification for warrantless entry. It is never suggested that some other exigency is required or that the exception in other words we've never expressly said all misdemeanors, whether they involve dangerous settings or not, were subject to warrantless entry. That's correct, Justice Thomas. You've never expressly said that. One last question with respect to common law. If we think that there is some doubt as to whether or not common law favors you, or if we think it actually does favor you, what should we do? Like in Atwater, this just isn't a case where there is a clear answer that existed in 1791 and has been adhered to ever since. Like in Atwater, Justice Thomas, other modes of constitutional analysis like the traditional interest balancing we've been discussing today should control. Thank you. Justice Breyer? This is a tough case. We brought a different subject many years ago. We spoke of a cruel trilemma. Well, here, if we take your view, then it seems like the home isn't the castle at all for the most trivial of things. I mean, many examples. I like the rabbit example. I don't know why California has made it a crime to give a rabbit a lottery prize or something, but I mean, it seems ridiculous and your home isn't your castle for terribly minor things. It's in the midst of a bright line where hot pursuit is really serving an important purpose. And if we take the middle thing, we have to do this distinction, misdemeanors and felonies, which is tough. And you're reading for this because you did a good job of preparing. Did you come across anything that sort of listed for us the reasons for hot pursuit and why it's there as a special category so you might say, well, hot pursuit where these reasons are there, but not hot pursuit has to be just the regular exigency where the crime is minor, somehow defined. Have you come across something I could read on that? Justice Breyer, unfortunately, I'm not sure I have a source for you that gives a clear answer to that, but I think Santana itself made clear that hot pursuit always serves important in identifying suspects and preventing their escape and ensuring officer and resident safety. Yeah, I know those things. That's true. But I mean, look, the rabbit case, I mean, that's ridiculous. The policeman can just get into your house when you went inside your house because you once sold a rabbit as a prize. I agree that that sounds ridiculous. But what do we do about the 50 or 1000 or the parking, you know, parking tickets or all kinds of things? Hot pursuit only allows officers to enter a home, Justice Breyer, when the suspect makes the decision to bring a public encounter inside a home. And so a suspect can always avoid any intrusion into a home by deciding not to flee inside, particularly in these sorts of silly cases. I think as Chief Justice Roberts suggested, if the suspect nevertheless decides to flee into a home, those might be the very cases where something worse is actually afoot. Hmm. OK, I will. I will think about it. Thank you, Justice Alito. A hot pursuit or any pursuit requires an attempt to avoid arrest. I think that's fair to say, Justice Alito. All right. And as the question that we accepted includes the term, it includes the phrase a state law enforcement officer's pursuit of the petitioner. The court below held only that a reasonable person in Mr. Lange's position would have seen the police lights and understood that the police officer was trying to stop him. But there is no whole, there is no finding and there is no holding that he was attempting to avoid arrest. So in Fourth Amendment cases, as Justice Sotomayor suggested earlier, the question focuses on the perspective of the police officer and what a reasonable officer in the officer's shoes would have understood to be going on. And so I do think in this case, when the officer turned on his lights and Mr. Lange decided not to stop, but instead to pull into his garage and begin closing the door, that Officer Weichert had probable cause to arrest him for a misdemeanor and the minimal intrusion into his garage allowed him to apprehend the petitioner there without going further into the home. No matter whose perspective we look at this from, the officer's Mr. Lange's perspective isn't the question whether he tried to get into his house for the purpose of evading arrest. And it wouldn't be a subjective inquiry. It would be an objective inquiry. Taking a look at this video, objectively, was this an attempt to evade arrest? I think so, Justice Alito. When an officer turns on his lights and a suspect decides not to pull over, but instead to enter into a garage and close the door, I think whether you're talking about the reasonable officer or the reasonable suspect, that is an attempt to thwart a lawful public arrest. Well, that wasn't something that was held by the lower court. That wasn't the standard the lower court applied. And I will say that  a hot pursuit. I think there was no dispute here that this qualified as a hot pursuit. If you disagree, I suppose the court could dismiss this case as improvidently granted. But I don't think that's necessary. There was a hot pursuit in this case because a hot  is a hot pursuit. I don't think so. I think the question presented is about whether the hot pursuit exception extends to misdemeanors, not whether this was a hot pursuit at all. Thank you. Justice Sotomayor? Counsel, assuming that I find the common law unclear on the margins, but I  that the offense nature allowed for warrantless entries into the home only for offenses that were minor, that every offense it listed or exception that it created was for serious offenses, not minor ones, how can we  adopt the exception without reference to labels like    but go back to whether or not the exception was for a minor offense that was not a warrantless entry and that the protection was necessary and the crime reflected the issues that the common law thought important to justify warrantless entry? Justice Sotomayor, I agree that the felony misdemeanor label isn't particularly helpful in this context, but to answer your question about the common law, if you think the common law tracks some kind of distinction  of the peace and other kinds of misdemeanors, I'd emphasize that Atwater considered exactly that kind of distinction and declined to distinguish between common law breaches of the peace and other  misdemeanors. I'm not sure that anyone here is advocating for a breach of the peace type line. Instead, whether you're talking about a case-by-case rule or a presumption, the things that the cases would seem to turn on don't relate to the severity of the offense, but in fact, whether in the language of petition or other exigencies existed. I think hot pursuit is an exigency, and so that additional analysis is unnecessary, but it certainly doesn't seem to turn on any kind of breach of the peace or other common law-based line. Thank you. Justice Kagan? Ms. Rice, if you look at our Fourth Amendment cases, you read them as a group over and over and over, they all talk about the home as the place of greatest protection. Everything else is compared to that and found not to be quite the thing that the Fourth Amendment protects. That's the central thing. Do you disagree with that? I agree with that, Justice Kagan. If I understand your argument, the way you get around that is by saying that in these hot pursuit cases, the suspect makes a decision to go into the home, it's almost a kind of waiver argument. Is that what you're saying? I think the fact that the encounter begins in public and the suspect decides to bring the encounter into the home is relevant. I don't know that I would classify it as waiver. I don't think it fits in the framework of consent, but I do think it diminishes the suspect's interest in the privacy of his home. I guess what I'm thinking of is this. I'm trying to see why we would make any distinction between this sort of case where the encounter begins in public and goes into the home and take advantage of   of his home. There's another kind of case, which is Payton, where the holding, of course, was that the police can't enter a home to arrest a felon without a warrant or without exigent circumstances, even if the felon is doing a crime right in his home. So why would we distinguish between the two? I think the difference between those two cases is crucial here, Justice Kagan. The point of the hot pursuit exception is that a suspect can't bootstrap the privacy protections of the home onto a public arrest through culpable conduct. So the decision to flee inside the home is a decision that I think makes the constitutional difference between the Payton case and the hot pursuit. In the Payton case, the person is also making a decision to do the crime, let's say that he's engaged in a massive fraud, and he's decided, hey, what a great idea, I'm going to  crime. He's actually leveraging the fact that the home is protected in order to get greater protection. And yet in Payton we said it doesn't matter. Justice Kagan, I think it's always the case, you're right, that a suspect decides to commit a crime and so is culpable in that sense. But changing the location of the encounter from a public space to a privacy space and then claiming, sorry, I'm in my home, it's a private space, you can't come in, isn't the kind of conduct that the Fourth Amendment is prepared to recognize as reasonable. Thank you, Ms. Rice. Justice Gorsuch. You did some careful work looking at some of the founding sources. Were you able to locate anything that suggests that officers have the power to enter the home in pursuit of any and all misdemeanor crimes or in the SG's version presumptively allowed to do so for any and all misdemeanors? I'm not sure there's a common law source that says that expressly. As Justice Thomas mentioned earlier, I think that authority is clear in the context of escapees. Conversely, though, I'm not sure petitioner or California has identified a single common law case where a warrantless entry of an officer in hot pursuit of a misdemeanor gave rise to a common law trespass. Given that there is no common law authority for the rule you propose of any and all misdemeanors or the rule that the Solicitor General proposes presumptively for any and all, if we can accept that, accepting that there are also some concerns about what breach of the peace or escape meant, I guess I'm back to where Justice Sotomayor is. Why would we adopt a rule  wrong as an original matter rather than what everyone understands to be the case of the Fourth Amendment as an original matter? Why would we adopt a rule we know is wrong as an original matter? Justice Gorsuch, I'm not sure it's as simple as that. I don't think we know the rule is wrong. I thought it was simple. No worries, Justice Gorsuch. I think the point is that the common law just doesn't map on very well to the question presented in this case. That's true for a number of reasons, including that an unlawful entry would not have provided a basis for overturning a conviction, but also because some authorities suggested that a warrant wasn't required to enter a house to make an arrest in the first place. The hot pursuit justification wouldn't have been necessary. I think it's fair to say there wasn't a clear answer here at common law. Other constitutional analysis should control. I guess I'm still stuck where I was. I don't know why we would adopt a rule that's less protective than the original meaning. You raise concerns about an officer's ability to distinguish between felonies and misdemeanors. There's also the line between misdemeanors and infractions that are non-jailable. If misdemeanors have proliferated in recent years, the number of these infractions has skyrocketed. Non-jailable traffic offenses, fire code violations, you choose. Rabbits. Does your rule allow an officer to enter the home for a violation of a regulatory rule as well? If not, why is drawing that line preferable to the misdemeanor line? The split here and the cert petition are limited to jailable misdemeanors. You don't need to resolve that question in this case. I would say that Atwater declined to draw a line between jailable and fine only offenses. I think the hot pursuit rule would probably extend to such offenses as a matter of logic. Thank you. Appreciate that. Justice Kavanaugh. Thank you, Chief Justice. Good morning, Ms. Rice. I want to explore how much of a difference there would be between the two positions for officers on the ground in the wake of our decision. I understand your position to be that there should be a categorical rule. It seems to me the reason to have a categorical rule is because there will be some kind of exigency involved when you have a hot pursuit. Destruction of evidence, danger to others, escape of the suspect. I guess that cuts both ways because one could say you don't need a categorical rule because you already have the exigency that covers all the things that justify the categorical rule. I guess I'm wondering what the real difference in practice would be between a world where we have a categorical rule and a world where we allow all the exigency and the circumstances doctrine cases to apply as they exist now. Justice Kavanaugh, I think you're right to suggest that the fact of the suspect's flight is itself an exigency and so is likely to be dispositive of the interest balancing in every case. But I think, then, that the case-by-case type rule is only depriving officers and courts, frankly, of the kind of clear rule that this court has said is particularly important where officers need to make quick decisions. It's also inviting constitutional litigation about those same quick decisions. So if you think that in every case or as Atwater suggested, in most cases, the balance of the interest will cut this way, this court's general preference for clear categorical rules should carry the day. Let me ask you a question now about methodology. The original meaning of the term unreasonable in the Fourth Amendment. It seems to me that's a different term. Unreasonable means unreasonable. What we're talking about is not original meaning or original intent or even original expected application. I'm not aware of  original meaning. The text is unlike the Seventh Amendment which refers to the common law expressly. It's not really original meaning or even original intent. It's more like presumed original expected applications like a Douglas style interpretation. No offense to Justice Douglas but a little more free form than what we usually talk about when we talk about original meaning. I just want to get your response to that. I think that's right Justice Kavanaugh. It's unlikely that the founders meant to freeze the text. I think it's fair to understand that term as one better served by a categorical interest balancing. Justice Barrett. Good morning, Mrs. Rice. I have a question about what it meant to breach the piece. That seems to be a capacious category. There's some dispute about what would fall within it. Is there any argument that resisting the constable would have been a breach of piece? I'm not aware of any authority directly on that point. I think you're absolutely right that it's unclear which offenses would and would fall within the common law felony. I assume it was a crime. Do you know? I believe it was, Justice Barrett. It certainly doesn't fall within one of the common law felonies. Does that mean it was a misdemeanor to do that? I don't know the answer to that question, but I think a common law suspect generally had no right to resist a lawful arrest. I don't know that that was a felony. I thought your brief was a little bit equivocal about whether your pursuit would require knowledge that you were being chased or not. Is your rationale for this that the cop could have arrested the defendant in public so the police officer can follow the defendant into the house to finish in private what was started in public? Or does it rely on consciousness of being chased? Justice Barrett, I think like other Fourth Amendment standards, it doesn't rely on any subjective knowledge, but I think a reasonable person in the suspect's shoes must understand that he's not free to leave. It's difficult to understand even the concept of flight or Santana's language around thwarting a public arrest without that kind of reasonable basis for understanding that they're not free to leave. So you would concede that we would have to ask if we adopted your rule whether a reasonable police officer could have understood the suspect to be fleeing as opposed to just going about his business not seeing the police officer and moving into the house? Correct, Justice Barrett. I think that that's a limit on the hot pursuit rule. Okay, thank you, Ms. Rice. Ms. Rice, a minute to wrap up. Thank you, Mr. Chief Justice. In this case, Officer Weikert's split-second decision to stop the garage door from closing was a reasonable minimal intrusion that almost certainly prevented this petitioner from getting away with drunk driving by refusing to heed the officer's lawful order to stop. So the decision below should be affirmed under any of the rules advocated here today, but the categorical hot pursuit rule best reflects precedent, appropriately balances law enforcement and privacy interests, provides necessary guidance to officers, and avoids unnecessary constitutional litigation. The justifications for that rule apply to felonies and misdemeanors alike, and it is exceedingly narrow. In the end, the categorical hot pursuit rule does nothing more and nothing less than prevent suspects from grafting the protections of the law. Mr. Chief Justice, I may please the court. The amicus has laid out the case for a categorical rule. Our principle submission is that for many of the same reasons, the court should recognize at least a general presumptive rule that when a misdemeanor suspect tries to thwart a lawful public encounter, an officer's decision to follow him is reasonable. A presumptive rule is appropriate where the circumstances generally present in a category of cases mean that law enforcement interests will always or nearly always outweigh the suspect's decision to bring a public encounter to the home diminishes any privacy interests he may have  Counsel,   understanding of the limits that apply to the presumptive rule? I think that the presumptive rule is that the primary limits apply when an officer does go into the home, assuming that your position that he's allowed to. What exactly are the limits on what he can do once he's in? We think there are three primary limits. The first is that the manner of entry itself must be reasonable. The second is that the scope of the entry has to comport with this court's cases essentially saying that it's not going to be a full-blown search of the entire residence. And third, of course, officers in this context can't use excessive force. The manner of entry must be reasonable. Presumably the person who fled in locked the door because he didn't want the police to catch him. Can the officer try to knock it down or what? I would quibble a little bit with the idea that the suspect will necessarily have locked the door. In a case like this, the garage door is closing. In Santana, the door was open. I don't think that was key to the analysis. There will be a class of cases where this question won't come up. It will be clear that the officer's action was reasonable. I think that will be a circumstance specific to the   think it will be a case of determination. I think it is in felony cases too in which we accept. Most of the parties before you accept in the lower court have treated the hot pursuit exception as a categorical rule. I suppose once he's inside, he can discover things that are in plain sight that might indicate a violation of the law. Thank you counsel. Justice Thomas? Thank you Mr. Chief Justice. Just a couple of quick questions. Did the common law permit entry for when there was a case of resisting arrest after a hot pursuit? Justice Thomas, I'm not aware of a specific case on that point. I know the closest analogy would be escape. In that case, yes, the common law did permit that type of entry. Do you think escape is a close enough comparator? Your Honor, I think the issue here is that everyone acknowledges that the common law does not fully answer this question and does not clearly answer this question. In that situation, the court should turn to other modes of constitutional analysis, particularly given the water under the bridge here. The court needs to conduct the interest balancing that it traditionally does, but also think about the  that there may arise lawful encounters in the felony context. The same is true in the misdemeanor context. Thank you. Justice Breyer? I asked last time, I want you to think of the cruel trilemma. There is a fourth possibility which your words nearly always suggested. And that is, what do you think? That we could say, yes, it's almost always exigent. Almost always. Because almost always the police departments have rules and almost always it is a felony and almost always there is a good reason for it. But we go back to the Constitution's words, reasonable, unreasonable, they can show that it is not reasonable in the circumstance. And there would be a number of different things you bring into that. One would be the length of the chase, was it just two steps or not. Another would be the type of conduct that led to the chase. So if it's a rabbit type of conduct, that's a pretty strong reason against allowing that chase into the house. And another would be the availability of the magistrate and the risk of escape. But you point out they only come up in a few cases. They don't normally chase people for minor things. But just leave it at that and say reasonable and we don't have an absolute rule. We thought we could answer this but sometimes you just can't. What do you think? I'm not saying I'm for it. I just want to know what you think. I think what you said very nearly approximates the rule that we submitted would be appropriate here. I think generally we think that when officers follow a suspect who they probably believe has committed a misdemeanor offense into a home that is going to be reasonable, we follow the court's decision which left open the possibility that a suspect could in an unusual case show that his was essentially the unusual case where the normal considerations aren't at play. I think that gives sufficient understanding that this will almost always be reasonable and the officer just has to have his eye out for the truly minor case where the things that we think are normally present in hot pursuit scenarios, for example, a concern about the ability to identify the suspect later, a concern about lots of exits where the officer is on the run, a concern   that the suspect can't identify the suspect later. Would your rule be different from an across the board exigent circumstances rule? Would it apply in felony cases if IRS officers went to someone's office to arrest the person for tax evasion and the person slipped out and there was a chase, the person went to his house, would it be open to that person to say that you should have gotten what you needed to get a warrant in that situation? I don't think it would. The first is that I do take this court's decision in Santana to categorically hold that the hot pursuit was sufficient in that context. I think this court has certainly taken, albeit not in holdings, but has repeatedly noted that the felon hot pursuit rule is its own exception and generally isn't part of the or the other exigent circumstances don't necessarily need to be proved on a case-by-case basis. It may not be a good hypothetical, but what you said takes us back to this distinction between felonies and misdemeanors, which is very difficult to impose as a nationwide Fourth Amendment requirement. I don't think it hinges on the authority of the felon. He has the authority to follow him in. That doesn't mean he should as a matter of policy, it just means that the Fourth Amendment doesn't restrict his ability to do so. If you're fleeing from a felony or a serious offense, what the Fifth    that he is free to do so under any circumstances. Justice Sotomayor? I continue to wonder why the dicta in our cases should control or make from dicta make the assumption that the mere commission of any felony justifies entry into a home, even in hot pursuit circumstances if the pursuit is not so hot. Maybe I'm going back to what Justice Alito started with earlier in saying, we really do need to understand what those terms mean to decide this case and make an absolute rule. Your presumption, it sounds like you want to make it a legal presumption and one that needs to be rebutted by the defendant, but I don't know why we would create a legal presumption, Ms. Ross. Why don't we just speak practically and say that there are some circumstances where that in many circumstances it might be justified to go into the home, but in some they're not and leave it at that. I'm not sure why we need to create a legal rule. Justice Sotomayor, I think a legal rule is appropriate here because it will make it easier for the defendant to    It will make it easier for the defendant to flee a public encounter. Ms. Ross, the first amendment by its nature creates judicial review because it speaks about reasonableness and unreasonableness. These categorical rules seem to destroy that presumption of the first amendment. I don't know why we should be creating more when the common law didn't. Justice Sotomayor, I don't think it would be stripping courts of judicial review. I think the point is to recognize how the   does not remove the fact of flight. I think it weighs heavily on both sides of the fourth amendment question. I think it would yield the same results in almost every case and therefore we think a presumption is warranted. I want to press on about presumptions. We look at fourth amendment law and we don't see the court talking about presumptions. In a couple of non-majority opinions, there is no tradition in fourth amendment law of using presumptions as opposed to case-by-case analysis of reasonableness. Why do you need it? There are plenty of doctrines that say to a police officer when in doubt maybe you can take a little bit more of a risk. Qualified immunity does that. In this case, there is the good faith exception lurking in the background. Why would you need a presumption rather than just you should make your best effort to do what you need to do? Justice Kagan, in terms of why we think officers need this presumption, I don't think it's because the end result is going to come out differently. In the field, it is helpful for officers to know that just as they have a presumption,    their best effort to do what they need to do. I think the reason why that's true is because the fact of flight itself is going to implicate significant government interests in the desire not to have suspects and the ability to do the same. There are certain facts present in a category of cases that are going to bear on the analysis in the same way in the vast majority of cases. If the court is more comfortable with the categorical rule, that's not something we oppose here. I don't  that's the case given the constraints I was discussing with Chief Justice Roberts. I would like to return to the question I raised earlier. You make a point about the difficulty of an officer's ability to distinguish between felonies and misdemeanors. There's a line between misdemeanors and infractions. They are multiple infractions these days. Do you like Ms. Rice to take the position that an officer can proceed into the home in hot pursuit of a violation of an infraction? I think the first thing I would say is that the presumptive rule that we have set out here, the logic of it certainly could apply. The unusual case probably wouldn't be quite as unusual in that circumstance. We think the very minor nature of the crime, not necessarily how it is classified as a matter of state law, but the very minor nature of the crime might affect the ability of a defendant to show the unusual case. If we put that together, an officer can go into a home to arrest for an infraction, a non- jailable infraction. We live in a world where everything is illegal. You put that together with the good faith exception and the fact that an  not being tested on his subjective intentions, and a hot pursuit can be pretty tepid, it turns out. Doesn't that sound like the general world in the founding of  United States? Is that something the framers were so concerned about rejecting? I don't think so for a couple of reasons. A key fact is the fact that the officer necessarily tried to have an encounter outside of the home. It's the suspect's decision to   of the home. I have a couple of options here as people have explored, but I want to narrow it down to two. I think there are two options here. One is categorical rule for felonies and exigent circumstances for misdemeanor cases. That's one option. The other option is categorical rule for both. I asked Ms. Rice about this. What would be the difference in the real world? She said clear rules for officers. I wonder if the exigent circumstances doctrine, the first option, wouldn't provide not as clear a rule, but still a pretty clear rule for officers. The exigent circumstances doctrine tracks common sense. These are the kinds of reasons an officer would do this in the first place, especially escape of the suspect, threats to others, destruction of evidence. I'm not sure what's gained by not having a categorical rule. Appreciate your analysis of that. I think what's gained by having a categorical rule is the administrability. If we expect that, especially once you take the fact of flight into account, which is going to make it hard for officers to know in any particular situation whether the other exigent circumstances are present, once you take that into account in the vast majority of cases, the analysis will come out to make the officer's action reasonable. Once we recognize that, it makes sense to provide additional clarity to officers and courts by adopting a categorical rule or a presumptive rule. The one caution is that will leave the category of extreme cases where an officer did not use common sense is still covered by the doctrine and that seems problematic as several people have raised. I don't think that's right, at least if you accept our        doctrine  correct. The absence of any exception that covers all misdemeanors is dispositive here. It's exigent circumstances all the way down. The test the commentators were applying was whether there was an immediate arrest. The subcategories that we talked about today are subcategories of that test. The second point is the question why not make hot pursuit a direct species of exigent circumstances. I think the reason to resist leaning too hard is it puts a lot of pressure on what constitutes a hot pursuit and what is hot. At common law it was clear that escape meant escape from a prior arrest. For the other side to craft a rule about hot pursuit, you have to ask questions about is some   hot pursuit specific category that would complicate matters. We're asking the officers to do what they do all the time. The presumption would complicate matters. There's already a thumb on the scale of officers in other ways. You don't need a categorical rule to solve that problem on a daily basis. For all those reasons we ask the court to reverse. Thank you counsel. Ms. Rice, this court appointed you to argue this case in support of the judgment below. You have ably discharged that  We are grateful. The case is submitted.